UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| LISA K. DAVIS, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No: 2:20-cv-00065 |
| v. | ) | |
| | ) | Judge Christopher H. Steger |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**

Plaintiff Lisa K. Davis seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. *See* [Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 20].

For the reasons that follow, Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 21] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 25] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

**II.  Procedural History**

On June 1, 2016, Plaintiff applied for disability insurance benefits, alleging disability as of March 18, 2016. (Tr. 15). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

A hearing was held on January 11, 2019, that included Plaintiff's attorney. *Id.* Administrative Law Judge Sherman D. Schwartzberg ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 15, 26). The ALJ then rendered his decision on March 19, 2019, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 26).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; however, that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on April 7, 2020, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since March 18, 2016, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following medically determinable impairments: hypertension, hyperlipidemia, chronic kidney disease, chronic obstructive pulmonary disease (COPD), brain tumor, sleep apnea, psoriatic arthritis, obesity, anxiety, and depression (20 C.F.R. §§ 404.1521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 C.F.R. §§ 404.1521 *et seq.).*

5. The claimant has not been under a disability, as defined by the Social Security Act, from March 18, 2016, through the date of this decision (20 C.F.R. § 404.1520(c)).

(Tr. at 17-26).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.   Analysis

The ALJ found at step one of the sequential evaluation that Plaintiff has not been engaged in substantial gainful activity since the alleged onset date. (Tr. 17). At step two, the ALJ found Plaintiff does not have a severe impairment or combination of impairments. *Id.* at 19. Thus, the ALJ ended the sequential evaluation and found that Plaintiff was not disabled. (*See* Tr. 19-26).

Plaintiff contends the ALJ: (1) erred in finding Plaintiff did not have a severe physical impairment; (2) erred in finding Plaintiff did not have a severe mental impairment; and (3) failed to properly weigh the opinion of Plaintiff's treating physician. The Court will address these arguments in turn.

A.   No Severe Physical Impairment

Plaintiff claims "there is no substantial evidence from which the ALJ could have properly found that Plaintiff's physical and mental impairments were not severe, and such a finding is contradicted by the extensive medical records and opinions of Plaintiff's treating physician." [Doc. 22 at 12].

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. This severity determination is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "An impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)). The severity threshold is properly for "screen[ing] out claims that are 'totally groundless' solely from a medical standpoint." 880 F.2d at 863. However, the "mere diagnosis . . . says nothing about the severity of the condition." *Id.* Finally, Plaintiff bears the burden of proof at this step of the

sequential evaluation. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

In his decision, the ALJ gave detailed explanations for why Plaintiff does not have a severe impairment. First, the ALJ methodically addressed Plaintiff's hypertension with a detailed paragraph discussing Plaintiff's hypertension treatment history during the relevant period. (*See* Tr. 20-21.) The ALJ cited to seven different medical visits, six of which were with Plaintiff's treating provider, Dr. Viorel Manole. (*See* Tr. 20-21, 295-314, 319-25, 573-86, 595-607, 616-23, 645-55, 662-70). These visits spanned January 2016 through September 2018. *Id.* Multiple findings from the records of those visits were cited to support the ALJ's ultimate conclusion that Plaintiff did not establish hypertension "symptoms that are reasonably expected to interfere with [Plaintiff's] ability to perform the basic activities of work." (Tr. 20-21).

The ALJ followed his hypertension paragraph with similar paragraphs addressing high cholesterol, chronic kidney disease, COPD, a brain tumor and headaches, sleep apnea and sleep difficulties, psoriatic arthritis, and obesity, respectively. The ALJ then included a summary paragraph for all of Plaintiff's physical conditions. In part, it states:

> [A]lthough the claimant has several medically determinable impairments, the evidence indicates that throughout the adjudicative period, her impairments have been noted to be stable, well controlled with medication, and with no medication side effects. Her primary care provider, as well as other providers, have documented relatively benign findings on physical examination, and the minimal diagnostic testing and imaging studies performed during the relevant period likewise do not indicate that the claimant has a severe medically determinable physical impairment.

(Tr. 23).

The Court concedes that this issue is a close one. In favor of Plaintiff's argument is the fact that severity is a *de minimis* hurdle meant to weed out claims that are medically totally groundless. On the other hand, Plaintiff bears the burden of proof and the focus is on the severity of Plaintiff's

6
Case 2:20-cv-00065-CHS   Document 30   Filed 09/17/24   Page 6 of 13   PageID #: 842

conditions, not just their existence.

The Court finds that the ALJ extensively and effectively supported his conclusion regarding physical severity. Further, the ALJ's careful analysis and conclusion are buttressed by the medical source opinions of consultative examiners Dr. L. Zuniga and Dr. Nathanial Briggs. Dr. Zuniga and Dr. Briggs separately opined that Plaintiff's hypertension, chronic kidney disease, COPD, sleep-related breathing disorders, fractures of the lower extremity, and obesity were all non-severe individually. (Tr. 52, 66). Additionally, they separately opined that Plaintiff did not have a combination of impairments that was severe. *Id.*

Plaintiff counters that Drs. Zuniga and Briggs' "opinions were rendered before extensive treatment of Plaintiff." [Doc. 22 at 12]. Plaintiff specifically cites treatment in January 2017[1] where "Dr. Manole noted that Plaintiff had psoriatic arthropathy, psoriasis, cervicalgia after a motor vehicle accident, anxiety disorder, COPD, insomnia, pulmonary emphysema and obstructive sleep apnea." *Id.* at 13. Plaintiff also cites to a statement from Dr. Manole from September 2018[2] in which he states Plaintiff has "joint pain-stiffness, skin rash, shortness of breath with exertion, morning stiffness, diffuse muscle tenderness[,] . . . swollen small and large joints with mild/moderate range of motion and ronchi and wheezing of the lungs." *Id.*

Regarding Plaintiff's claim about the opinions of Drs. Zuniga and Briggs, the Court notes that Dr. Zuniga's opinion was signed on September 13, 2016, and Dr. Briggs' was signed on February 10, 2017. (Tr. 56, 65, respectively). Both of these are less than two years before the hearing with the ALJ on January 11, 2019. However, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a

---

[1] Plaintiff accidentally cites page 793 of the Transcript when the intended citation was 693.
[2] Plaintiff claims this opinion was from December 5, 2018. It is actually dated September 15, 2018. (*See* Tr. 529).

7

Case 2:20-cv-00065-CHS   Document 30   Filed 09/17/24   Page 7 of 13   PageID #: 843

report and the ALJ's decision in reliance on it." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The Court finds the opinions by Drs. Zuniga and Briggs timely enough to reasonably support the ALJ's severity determination.

Regarding Plaintiff's citation to the January 2017 medical record from Dr. Manole, the Court finds that the conditions listed say nothing about the severity of those conditions. *See Farris*, 880 F.2d at 863. Thus, Plaintiff's claim in this regard is unpersuasive. Again, the ALJ's detailed and accurate discussion of Plaintiff's medical records—specifically examining such things as reported symptoms, effects of medication, physical exam findings, and diagnostic testing and results—supports his severity conclusion.

Next, Plaintiff's citation to the September 15, 2018 opinion from Dr. Manole is minimally persuasive. This one-page document[3] seems to be a summary of Plaintiff's conditions based on Dr. Manole's longitudinal treatment relationship with Plaintiff. (*See* Tr. 529). It is not a description of Plaintiff's current condition based on physical examination, symptom exploration, and/or diagnostic results. Thus, the ALJ's careful discussion of the specifics found throughout Plaintiff's medical record history methodically refutes this opinion from Dr. Manole. Additionally, the Court notes the following from Plaintiff's September 7, 2018 visit with Dr. Manole:

| Chief Complaint | "Patient states she is here for follow up and medication refills." |
|---|---|
| Sleep Apnea | "The patient reports doing well. She has had no significant interval events. The patient is currently asymptomatic. Associated symptoms: no morning headaches, no depression and no decreased libido." |
| Fibromyalgia | "Interval symptoms: stable myalgias, stable arthralgias, stable diffuse tenderness, stable fatigue and stable sleep disturbance." "Patient denies medication side effects." |
| Hyperlipidemia | "The patient states her hyperlipidemia has been under good control since the last visit." "She has no significant interval events." "The patient is currently asymptomatic." "She denies medication side |

---

[3] The Court notes that two pages of Plaintiff's medication history are attached to the document. However, Plaintiff focuses on the written information provided by Dr. Manole.

| | effects." |
|---|---|
| Chronic Kidney Disease | "Recently the disease has been stable. There are no known disease complications. The patient is currently asymptomatic. No associated symptoms are reported." |
| Hypertension | "The patient states she has been doing well with her blood pressure control since the last visit." "She has no significant interval events." "The patient is currently asymptomatic. Associated symptoms include no headache, no focal neurologic deficits and no memory loss." "Blood pressure control has been good." "She denies medication side effects." |
| Rheumatoid Arthritis | "The patient states her RA has been stable since the last visit." |
| Psoriasis | "The patient reports doing well." "Interval symptoms: stable skin scaling, stable itching, denies localized skin redness, stable plaque-like lesions, denies pustules and denies nail changes." "No joint pain, no joint swelling, no depression and no social withdrawal." |
| COPD | "The patient states she has been doing well with her COPD control since the last visit. She has no significant interval events." "The patient is currently asymptomatic." "The patient is not currently on any medications for her COPD." |

The only medical issues that seemed to be actively causing issues for Plaintiff at this visit were a migraine headache and her psoriatic arthritis. The medical record states that "[t]he patient is being see for an initial evaluation of migraine headache." Thus, migraine headache does not seem to be a major part of Plaintiff's claim alleging disability as of March 18, 2016.

The notes on the psoriatic arthritis are somewhat conflicting. While Dr. Manole wrote that Plaintiff reported "joint pain and tenderness" as well as "fatigue," he also ranked psoriatic arthritis as the 30th priority[4] among Plaintiff's health issues. (Tr. 573, 575). Further, on physical exam Dr. Manole reported benign findings for Plaintiff's eyes, fingernails, muscles, and joints.[5] (Tr. 582). For example, Dr. Manole noted "normal gait, muscle strength and tone were normal, no clubbing or cyanosis of the fingernails, there was no joint instability noted and no joint swelling seen." *Id.*

---

[4] It is possible that Dr. Manole was not intending to communicate that Plaintiff's psoriatic arthritis was his 30th priority for Plaintiff's health, but it appears at number 30 in what at least starts out as a list of Plaintiff's health priorities. (*See* Tr. 574-75).
[5] Eyes, fingernails, muscles, and joints are common portions of the body affected by psoriatic arthritis. *Psoriatic Arthritis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/psoriatic-arthritis/symptoms-causes/syc-20354076 (last visited Sep. 15, 2024).

Finally, at a June 6, 2018 Rheumatology follow-up for her psoriatic arthritis, Plaintiff was noted to have "no major flares; morning stiffness lasting about an hour." (Tr. 589). Thus, the medical records from just before Dr. Manole's September 15, 2018 opinion offer little to support that Plaintiff had a severe impairment. Rather, those medical records are consistent with the medical records from 2016 and 2017 cited by the ALJ in support of his finding of non-severity.

Ultimately, none of Plaintiff's arguments regarding the ALJ's severity determination are very persuasive. The opinions of Dr. Zuniga and Briggs are reasonably timely, Plaintiff's citations to the January 2017 medical records do not address severity, and medical records roughly contemporaneous with Dr. Manole's September 15, 2018 opinion do not strongly support his claims in that opinion. Rather, the evidence of record substantially supports the ALJ's finding that Plaintiff did not have a severe impairment or combination of impairments.

### B. No Severe Mental Impairment

Plaintiff claims "that the ALJ's finding that Plaintiff did not have a severe mental impairment is also not supported by substantial evidence." [Doc. 22 at 16]. In support of this argument, Plaintiff cites to two visits—December 1, 2016, and July 31, 2018—with Dr. Judy Millington, a psychologist. Plaintiff only cites conditions noted by Dr. Millington at these visits without addressing the severity of those conditions.

The Court again finds that the conditions listed say nothing about the severity of those conditions. *See Farris,* 880 F.2d at 863. Much more persuasive is the ALJ's in-depth analysis of the severity of Plaintiff's mental impairments. The ALJ wrote an extensive paragraph analyzing longitudinal records of Plaintiff's mental treatment records. The ALJ also wrote detailed paragraphs analyzing each of the four paragraph B criteria. Finally, the ALJ thoroughly discussed the opinions of Rebecca Sweeney, Ph.D., Richard J. Milan, Jr., Ph.D., Kathy Birchfield, M.Ed.,

and Diane L. Whitehead, Ph.D. In light of the ALJ's comprehensive and careful analysis of Plaintiff's mental conditions, Plaintiff's cursory objection is unpersuasive.

C. **Treating Provider Rule**

Plaintiff claims "that the ALJ failed to properly weigh [the September 15, 2018] opinion of Dr. Manole, the Plaintiff's treating physician." [Doc. 22 at 13]. Further, "the ALJ has not given a 'good reason' for the weight to be given to the treating physician's opinion." *Id.* at 14.

If a treating physician's opinion as to the nature and severity of impairment is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). In making this determination, the appropriate weight to be given to a treating physician's opinion should be based on the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the entire record, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that their physician has deemed them disabled and thus "might be especially bewildered when told by an administrative bureaucracy that

[they] [are] not . . . ." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also permits a meaningful review of the treating-provider rule's application. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

Here, the ALJ noted that Dr. Manole did not opine on Plaintiff's "specific physical or mental functioning, but instead simply renders an opinion on an ultimate issue reserved for the Commissioner." (Tr. 25). The Court agrees. Dr. Manole's opinion is simply a list of Plaintiff's conditions and symptoms with some check marks on the issue of disability. No detail is provided discussing Plaintiff's specific physical or mental functioning.[6] Such detail is not required, but it would significantly buttress the persuasiveness of Dr. Manole's opinion.

Next, the ALJ cites to Dr. Manole's own treatment of Plaintiff from the same month. (Tr. 25). The ALJ points to numerous specific findings that undermine Dr. Manole's opinion. *Id.* at 25-26. Following these specific medical data points, the ALJ also notes the inconsistency of Dr. Manole's opinion with "the overall medical evidence." *Id.* at 26. Finally, the ALJ notes that Dr. Manole's opinion is inconsistent with the opinions of Drs. Zuniga and Briggs.

The Court finds the ALJ's support for his decision not to give Dr. Manole's opinion controlling weight to be considerable. The ALJ gave specific reasons from the medical record that clearly communicate to any reviewer why Dr. Manole's September 2018 opinion was given little weight. Additionally, the ALJ's detailed and comprehensive treatment of the medical record earlier in the decision[7] greatly bolsters the persuasiveness of his citation to "the overall medical evidence." Thus, the Court finds that the ALJ clearly communicated "good reasons" for not assigning Dr. Manole's opinion controlling weight.

---

[7] As discussed above in this opinion.

In sum, the ALJ's rationale is clearly and comprehensively communicated at each step of his analysis. Therefore, the Court finds that his decision is supported by substantial evidence.

VI.    **Conclusion**

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 21] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 25] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE